40 N.J. Super. 130 (1956)
122 A.2d 377
FRANK M. ZIERER, PLAINTIFF-APPELLANT,
v.
GENE L. DANIELS AND HAROLD M. SCHUMACHER, T/A SCHUMACHER CHEVROLET, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided April 20, 1956.
*132 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. David Cohn argued the cause for plaintiff-appellant (Mr. Albert L. Cohn on the brief).
Mr. A. Leo Bohl argued the cause for defendant-respondent Harold M. Schumacher, t/a Schumacher Chevrolet.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This case arises out of an automobile accident. The question  a novel one in this State  is whether the defendant, Harold M. Schumacher, trading as Schumacher Chevrolet, who undertook for a consideration to repair the brakes of a car for its owner, the defendant, Gene L. Daniels, is liable in tort for damages and injuries allegedly sustained by a third person, the plaintiff, as a result of Schumacher's alleged negligence in making the repair.
The question was raised below on a motion by Schumacher to strike the third count in the amended complaint. The ground of the motion was failure to state a claim upon which *133 relief could be granted. In that count it is alleged that Schumacher, apparently on the very day of the accident, undertook for a consideration to adjust and do work on the brakes of a 1948 Chevrolet belonging to Daniels, but did his work negligently or failed to do it properly, and as a result, Daniels, while driving his car on a public highway, propelled it into plaintiff's car when (as it appears from the first count, now dismissed) it was at a standstill. The motion was not supported by affidavits. Nevertheless, since Schumacher interposed it after he had served his answer, he might better have framed it as a motion for summary judgment. R.R. 4:58-2; cf. 4:12-2. However we will treat it as such.
The trial court granted the motion, striking the third count; and plaintiff appeals. For the purposes of the appeal, the order on the motion may be deemed to be a final judgment; for we are informed that the other counts of the complaint have been dismissed by stipulation of the parties, thereby disposing of all the remaining issues in the case. Cf. West Side Trust Co. v. Gascoigne, 39 N.J. Super. 467 (App. Div. 1956).
The complaint charges Schumacher with misfeasance and perhaps also with nonfeasance. Under the prevailing rule today in other jurisdictions, in a case of misfeasance, he who repairs a chattel is bound to exercise reasonable care not to cause bodily harm or damage to one whose person or property may reasonably be expected to be endangered by the probable use of the chattel after the making of the repair. In such a case the obligation in tort is fastened to the repairman's acts quite aside from any obligation in contract. Under this rule, one who negligently repairs an automobile at the request of the owner has been held liable to a third person. Hudson v. Moonier, 94 F.2d 132, 136, 137 (8 Cir. 1938), refusing to follow earlier contrary cases, reversed on other grounds 304 U.S. 397, 58 S.Ct. 954, 82 L.Ed. 1422 (1938), same case, 102 F.2d 96 (8 Cir. 1939); Oliver v. Bereano, 267 App. Div. 747, 48 N.Y.S.2d 142 (App. Div. 1944), affirmed 293 N.Y. 931, *134 60 N.E.2d 134 (Ct. App. 1944); Kalinowski v. Truck Equipment Co., 237 App. Div. 472, 261 N.Y.S. 657 (App. Div. 1933); Frantz v. General Motors Corporation, 176 F.2d 80, 82 (3 Cir. 1949), stating the Pennsylvania law, and see Wissman v. General Tire Co. of Philadelphia, 327 Pa. 215, 192 A. 633, 634 (Sup. Ct. 1937)  both cases approving Restatement of Torts, § 404 cited below; see Egan Chevrolet Co. v. Bruner, 102 F.2d 373, 375 (8 Cir. 1939); cf. Moody v. Martin Motor Co., 76 Ga. App. 456, 46 S.E.2d 197 (Ct. App. 1948); Jewell v. Dell, Ky., 284 S.W.2d 92, 96 (Ct. App. 1955). For cases reaching a like result with respect to the repair of chattels other than autos, see Prosser, Torts (2nd ed. 1955), 517. Prosser cites earlier contrary law, but dismisses it as "now ancient history." See also Restatement of Torts, § 404, which provides:
"One who as an independent contractor negligently makes, rebuilds or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels under the rules stated in §§ 395 to 398."
Restatement of Torts, § 395, thus referred to, provides:
"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."
The liability also extends to property damage, see Prosser, supra, §§ 84, 85. Further as to § 395 of the Restatement, see Heckel v. Ford Motor Co., 101 N.J.L. 385 (E. & A. 1925). As to § 404, see 65 C.J.S., Negligence, § 101.
New Jersey has not dealt with the precise point. However attention might be called in passing, to comments with respect to Winterbottom v. Wright, 10 M. & W. 109, 152 Eng. Rep. 402 (Ex. 1842), which will be found in the leading case in this State on a closely related subject, O'Donnell v. Asplundh *135 Tree Expert Co., 13 N.J. 319, 328, 329 (1953). In the Winterbottom case an action was brought by a driver of a mail coach against a defendant because of the latter's failure to carry out properly his contract with the Postmaster General, inter alia, to keep the coach in repair.
In our opinion the rule established by the authorities above cited is sound. The very paucity of reported cases on the subject, even in the jurisdictions adopting the rule, will serve to allay all apprehensions that such a rule might either increase or complicate auto accident litigation to a serious extent or place upon auto repairmen an enormous burden. We see no reason, then, not to give effect here to the strong principle of the law ordinarily requiring one who has committed an act of negligence to answer for its proximate consequences.
Defendant Schumacher, however, claims that such cause of action as plaintiff may have here is barred by Miller v. Davis & Averill, Inc., 137 N.J.L. 671 (E. & A. 1948). In that case an employee, whose job it was to operate a crane at a warehouse, sued an independent contractor for negligence allegedly committed by the latter in repairing a part of the crane more than two years before the accident. A nonsuit granted below was sustained on appeal. The plaintiff relied on the rule of Heckel v. Ford Motor Co., 101 N.J.L. 385 (E. & A. 1925), supra; but the court held the rule inapplicable, saying there was no imminent danger when the repair was made, and the instrumentality had been in use without incident for over two years. The lapse of so much time may preclude any inference of negligence in the making of the repair, Prosser, supra, 517, n. 20; cf. Okker v. Chrome Furniture Mfg. Corp., 26 N.J. Super. 295, 299 (App. Div. 1953); and if negligence was not inferable there, the court was of course obliged to sustain the nonsuit. However, this question as to lapse of time seems to have no pertinency here.
It was also held in Miller that the defendant, the independent contractor which made the repair, is no longer liable after it
*136 "* * * has completed the work and turned it over to the owner * * * and it has been accepted by [the owner] * * *. When the work is finished by the contractor and accepted by the [owner] the latter is substituted as the party responsible for existing defects. * * *
* * * `this rule is based upon the reason that the owner and not the contractor's negligence in such a case is the proximate cause of the injuries; the theory being that, by occupying and resuming exclusive possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. The duty of inspection and repairing in such a case is exclusively upon the owner.'"
As indicated, the theory of the rule stated is that the owner, by taking possession of the instrument after its repair, deprived the contractor of all opportunity to rectify the wrong. Why an independent contractor should be freed of responsibility on such a theory, while a manufacturer, supplier or assembler of a chattel may be subjected to liability after the chattel has reached the ownership and exclusive possession of another, O'Donnell v. Asplundh Tree Expert Co., supra, raises a question which we need not answer. Prosser makes some comment on Miller and like cases, pointing out that they exemplify a rule favoring, apparently, building contractors. See Prosser, supra, 517-519; also note the last paragraph of the black letter on 514. If this be the purport of the rule, there may be no warrant for extending it to a contractor repairing an automobile. However, we need not pursue this inquiry.
Suffice it to say, in the first place, that if the rule applies here, defendant Schumacher may take advantage of it only by setting up and establishing, by way of an affirmative defense, that the work was completed, cf. Bacak v. Hogya, 4 N.J. 417 (1950), and accepted by the owner, cf. Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 174 (1955). It is true that it is alleged in the third count that Daniels "paid a valuable consideration" for the work "performed" and proceeded to operate his car on a public highway. However, we need not stop to determine whether these averments establish an acceptance of the work by the owner; nor need we consider to what extent (if at all) the owner must voluntarily waive defects in the work before it can *137 be said that he accepts the work entirely. Counsel have not dealt with these matters.
In the second place, in our opinion, Schumacher cannot maintain such a defense unless he sets up therein and proves that the owner either knew of the defect in the brakes when he accepted the work (in which case there may be a waiver, as above suggested) or, in the exercise of reasonable care, should have discovered the defect before the accident and thus avoided the accident. Cf. Prosser, supra, 519. To hold otherwise would permit a repairman to escape responsibility when he through his own negligence puts certain forces in motion and indeed has reason to anticipate that an accident would result therefrom and when at the same time the owner could not reasonably have prevented it. We do not charge the owner with responsibility in a case in which he neither knew of the defect nor could have discovered it in the exercise of reasonable care (Blankley v. Nostrame, 30 N.J. Super. 405 (App. Div. 1954), dealing with a principal contractor and a subcontractor; cf. O'Donnell v. Asplundh Tree Expert Co., 13 N.J., at pages 336-338, supra); that is, as held in Blankley, the owner in such a case is not "substituted [for the contractor] as the party responsible" (Miller, 137 N.J.L., at page 675). Likewise in such a case, we see no good reason why we should free the repairman from liability. Cf. Restatement of Torts, § 396 (Supp. 1948).
In connection with this point, it is to be noted, in passing, that in Miller, as the court pointed out, the proofs showed
"* * * that the owner undertook inspection of the instrument and made repeated inspections during the years following the making of the repairs * * *." 137 N.J.L., at page 675, supra.
Years of inspection by the owner would constitute a very significant factor in determining whether or not he could have discovered the defect in the exercise of reasonable care.
Schumacher's next point is that Daniels' acceptance of the automobile broke the chain of causation and relieved him of liability. In Miller, 137 N.J.L., at page 675, supra, *138 it was said (as more fully indicated by the quotation appearing above):
"`This rule [that an independent contractor is not liable after completion of the work and acceptance of it by the owner] is based upon the reason that the owner and not the contractor's negligence * * * is the proximate cause of the injuries.'"
This argument however presents merely a restatement, in different terms, of the very point just considered.
Schumacher, however, argues further that negligence, committed by Daniels in driving his automobile on the highway, broke the chain of causation. The short answer to this is that there is no such allegation in the third count of the complaint. Furthermore, it may be observed that questions as to causation and the effect of plural and concurrent causes should ordinarily be left to a jury to decide. Bacak v. Hogya, 4 N.J. 417, 424 (1950); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 175 (1955); see, too, what was said in Miller, 137 N.J.L., at pages 675, 676. We obviously should not at this stage of the case concern ourselves with issues that may or may not develop at the trial, for example, as to whether Daniels, after he paid Schumacher, discovered an impairment in the brakes before the accident and as to how long thereafter he continued to drive the car. It is sufficient merely to say now that there is no allegation in the third count on the issue of causation, which would require us to hold, as a matter of law, that Schumacher was freed of liability with respect to the accident.
Reversed. Costs to abide the event.
JAYNE, J.A.D. (concurring).
In the circumstances disclosed by the present appeal, notably (a) the absence of any appreciable period of time between the completion of the repair and the manifestation of its alleged faulty nature, and (b) the fact that the judgment was rendered solely on the pleadings, I concur in the reversal.